## Lupinacci v. Lupinacci

*David Oshiver*, for libellant.

LEWIS, J., July 11, 1941.—The master in this case has recommended that the libel to annul the marriage be dismissed. This is based upon his conclusion that libellant failed to meet the burden of proof required by law to establish that, at the time of the marriage, he did not possess the legal capacity to engage in a valid contract of marriage.

From a careful review of the testimony, we find that libellant and the respondent knew each other but slightly, and that the alleged marriage occurred during the second occasion on which they went out together. At that time libellant was engaged to another young woman, to whom he still considers himself "engaged". The two were in the company of a man named Donnelly, and together they had spent a large part of the evening drinking in various taprooms. In the first part of the evening libellant had driven the automobile, but as the evening wore on his condition became such that Donnelly had to take the wheel. While the three were thus driving about they passed the sign of a justice of the peace, and at the suggestion of respondent the car was stopped. Libellant and respondent had a license which they had obtained about three weeks before during their first meeting, while out on a similar drunken spree, so respondent suggested that they then get married. The second man, however, proposed that they toss a coin to see which of the two men

would marry the girl. It appears that Donnelly tossed the coin and declared that libellant had won. To this libellant was said to have made no remark and, assisted by the others, he got out of the car and went in to the justice of the peace, by whom a ceremony of marriage was performed. In connection with the ceremony the parties used a ring borrowed from Donnelly, which respondent returned to him immediately afterwards. The three then stopped at a taproom for more drinks, after which Donnelly drove each of the parties to their respective homes. He saw to it that libellant was safely in his home, and left libellant's car in front of his house overnight.

From the testimony of Donnelly, it appears that libellant acted as though he were in a drunken stupor during the ceremony and for the remainder of the evening, since he kept quiet and did not enter into any of the conversations. The following morning Donnelly brought the marriage certificate to libellant, who seemed surprised and thought Donnelly was only joking.

After the evening on which the ceremony was performed, the parties never went out together, rarely spoke to each other, never took up a common abode or in any way adopted the status of marriage. The attitude of both the parties was that the ceremony was a "mistake". The master found as a fact there was no cohabitation at any time between the parties.

The testimony of libellant was, in all respects, corroborated by Donnelly, and was admitted without contradiction by respondent. The subsequent actions of the parties likewise confirm their testimony to the effect that, at the time of the ceremony, one at least of the parties was not possessed of his reason and utterly failed to understand the nature and consequences of his acts, and was therefore without contractual capacity. Hence, the ceremony was perfunctory and lacked the elements of a bona fide marriage.

While the policy of the law is to uphold marriage where it has been entered into solemnly and with understanding of its important consequences, it is not to the interest of the State, nor would it be helpful to the institution of marriage, to compel the fulfillment of a so-called contract which the parties entered into in the spirit of jest or in a drunken stupor.

For the foregoing reasons, the exceptions are sustained, and the master's report is disapproved. Let final rule for annulment issue.